## Corson *versus* Mulvany.

*Ejectment to compel specific performance of contract to sell mineral lands.
—Mutuality of contract discussed.—Waiver of full performance by
vendee.—Ejectment, and bill in equity, concurrent remedies.*

1. Where one, by written articles of agreement, agreed to permit another to
search for iron-ore on his land for a fixed time, and then to have the option of
purchase at a price named, a part to be paid on execution of the deed and
the balance secured by mortgage at two years; in an action of ejectment by
vendee, after election to take the land, notice to vendor, and tender of the
down-money, to compel specific performance; evidence is not admissible
that the contemplated use of the land would destroy its value within the two
years, and that the vendee and intended mortgagor was otherwise unable to
pay, unless his circumstances had changed since the making of the agree-
ment.

2. An agreement for the purchase of the land at the option of the vendee
only is not, for that reason, so devoid of mutuality, that on election and
notice, it will not be enforced: nor will the refusal of the vendor to accept
the consideration, destroy the mutuality, though the vendee might thereupon
retract his election.

3. A vendee may waive full performance of an agreement for the purchase
of land and take the title which the vendor can give: and hence if he agree to
waive a release of dower by the wife of the vendor, the latter cannot object
to performance on the ground that his wife refuses to sign the conveyance.

4. The common law remedy by ejectment as a means of compelling specific
performance, is not taken away by the grant of equity powers to the Courts
of Common Pleas.

ERROR to the Common Pleas of *Montgomery county.*

This was an action of ejectment, brought by Daniel H. Mulvany
against Hiram Corson, to recover between seven and eight acres
of land, by the enforcement of the following agreement between
plaintiff and defendant, dated 12th December 1863:—

"Dr. Hiram Corson hereby agrees that D. H. Mulvany shall
dig five shafts for iron-ore on the lot of said Corson, fronting on
the Spring Mill and Marble Hall Road, and bounded by lands
of Joseph Freas and others, in Whitemarsh township, containing
seven and three-quarters acres, at any time prior to the 1st day
of April next 1864, and if said Mulvany shall
desire to purchase said tract of land at that time,
(STAMP.)    at the price or sum of $1000, he shall have the
H. C.    right and privilege of so doing, the purchase-
D. H. M.    money in that case to be paid as follows: $200
Dec. 12 1863.   cash, on the execution of the deed on the said 1st
of April, and the balance of $800 in two years
thereafter, with lawful interest payable annually,
to be secured by mortgage on the premises.

"In witness whereof the said parties have hereunto set their
hands and seals, this 12th day of December, A. D. 1863."

The plaintiff took possession and dug five shafts; while dig-

[Corson *v.* Mulvany.]

ging the fifth a bed of iron-ore was discovered.    On the 28th of
March 1864, the following notice of the plaintiff's election to
take the property was left at the residence of the defendant, with
his wife.

"Norristown, March 28th 1864.

"Dr. Hiram Corson:

"Dear Sir :—You are aware that after having sunk the five
shafts referred to in the article of agreement between us, dated
the 12th day of December 1863, on the tract of land fronting on
the Spring Mill and Marble Hall Road, and bounded by lands
of Joseph Freas and others, containing seven and three-quarter
acres of land, and found a bed of iron-ore, I made up my mind
to take the property at the price and on the terms mentioned
and referred to in the said agreement; but, in order to avoid
any misunderstanding, I deem it proper to give you this formal
notice, that I have elected to take and purchase and do elect to
take and purchase the said tract of land at the price and upon
the terms mentioned and referred to in the said agreement.

"In order that the contract between us may be carried out, I
will call at your residence on Friday next, the 1st day of April,
inst., at five o'clock in the afternoon, or thereabouts, to pay you
the first instalment of purchase-money, and place in your hands
my bond and mortgage for the balance, in conformity with my
part of the agreement.

"Hoping that you will at the same time be prepared to exe-
cute to me a good deed for the premises, I remain,

"Very respectfully, yours, &c.,

"D. H. MULVANY."

On the 1st of April, the plaintiff called on the defendant and
tendered the sum of $200 in legal tender notes and a bond and
mortgage for $800, the consideration-money mentioned in the
agreement.    These were refused, and the defendant declined to
give a deed to the plaintiff for the premises, alleging that his
wife was unwilling to sign it.    The plaintiff then proposed to
take a deed from the defendant alone, which the defendant still
refused to give.

The wife of the defendant had, on the 24th of March 1864,
given written notice to the plaintiff that she would not sign the
deed.    The defendant was in possession when the action was
brought.    On the trial $200 in legal tender notes were again
tendered as well as the bond and mortgage, which, on refusal by
the defendant to accept, were deposited in court for his use.

Under the ruling of the court, there was a verdict and judg-
ment "in favour of the plaintiff for the property described in the
writ of ejectment, the defendant to have the right to take out of
court the sum of $200 paid in for his use, and also the mortgage

[Corson *v.* Mulvany.]

and bond filed by plaintiff for the balance of the purchase-money upon the execution of a deed by defendant to plaintiff for said premises."

This writ was then sued out by defendant, for whom the following errors were assigned :—

1. The court erred in rejecting the defendant's offer to prove " that by the ordinary process of mining iron-ore in the locality of this property, that the lot would be so dug up and destroyed as to be utterly valueless before the expiration of two years, the time appointed for payment of the balance of the purchase-money."

2. The court erred in rejecting the defendant's offer to prove " the amount of unsatisfied mortgages and judgments against D. H. Mulvany," the same being offered to show that said mortgage of $800 on the premises would be the only security for the same.

3. The court erred in their answer to the defendant's first point, which was as follows:—

" The alleged agreement, dated December 12th 1863, is not such as can be enforced in this suit, because of the want of mutuality in the same, and therefore the plaintiff cannot recover in this suit."

Answer.—" We cannot so instruct you. The plaintiff made his election to take the property on the 28th of March 1864, and was bound by it. Mutuality, ŏr a reciprocal obligation, was thus created, and the defendant had it in his power to enforce the contract."

4. The court erred in their answer to the defendant's second point, viz. :—

" In order to have specific performance of an agreement, all the parties to it must be mutually bound, so that either can enforce against the other performance of the same ; and as the said Corson could not compel Mulvany to take said property, there is such a want of mutuality as to prevent the plaintiff recovering in this suit."

Answer.—" In the absence of the plaintiff's election, the position would be correct; but as the case stands, we cannot so instruct you."

5. The court erred in their answer to the defendant's third point, viz. :—

" If the jury believe that the defendant's wife refused, and still does refuse, to join in a conveyance of said premises to the plaintiff, there can be no specific performance, and the plaintiff, for this reason, is not entitled to recover in this suit."

Answer.—" We cannot so instruct you. The plaintiff waived the wife's conveyance; and proposed to take a deed from the

[Corson v. Mulvany.]

plaintiff alone, which he was able to give, but which he refused to do."

6. The court erred in their answer to the defendant's fourth point, which was as follows:—

" To have specific performance of an agreement, the equity side of the court only has jurisdiction, and it cannot be enforced in this form of action."

Answer.—" We believe the jurisdiction of the court, under the Act of Assembly and by bill in equity, to be concurrent. Until the act is repealed, the remedy provided by it is available, and the grant of an extension of chancery jurisdiction to the Court of Common Pleas has not that effect."

7. The court erred in their answer to the defendant's fifth point, viz.:—

" The plaintiff cannot recover in this suit, because he can be compensated in damages for any injury that he may have sustained by reason of the defendant's refusal to convey said premises."

Answer.—" We answer this in the negative."

8. The court erred in their answer to defendant's sixth point, which was as follows:—

" The plaintiff cannot recover, because the said alleged agreement does not sufficiently describe the real estate and premises claimed by the plaintiff."

Answer.—" We answer this in the negative."

9. The court erred in their answer to defendant's seventh point, which was as follows:—

" If the court should be of opinion that said alleged agreement is a deed or instrument of writing, whereby lands, tenements, or other realty sold, are granted, &c., then the said paper is not legally stamped."

Answer.—" We answer this in the negative."

10. The court erred in their answer to defendant's eighth point, which was as follows:—

" That the mortgage filed on the trial, as a tender to the defendant, is not good and sufficient, inasmuch as it states what is not the fact, and is not even claimed by the plaintiff, viz.:—That the premises described therein are the same premises 'which Hiram Corson and wife' conveyed to plaintiff, &c."

Answer.—" We answer this in the negative."

11. The court erred in their answer to defendant's ninth point, which was as follows:—

" The tender testified to by John M. Hunsicker, and made in court, was not sufficient."

Answer.—" We answer this in the negative. Whether the defendant waived a tender by refusing to execute the deed need

[Corson *v.* Mulvany.]

not be considered. It does not appear there was any objection made to the money or the instruments tendered."

12. The court erred in not charging the jury that their verdict must be for defendant, as there was no offer on the part of Mulvany before suit brought to take the deed without the wife's signature.

13. The verdict is too vague and uncertain with regard to the description of the premises.

14. The court erred in not charging the jury, that the election of plaintiff to take the defendant's deed without the joinder of his wife, was made too late.

15. The court erred in charging the jury as follows:—"If you believe the evidence, it is the opinion of the court the plaintiff is entitled to your verdict."

*George N. Corson* and *James Boyd,* for plaintiff in error, argued, that the offer of testimony as set forth in the first and second specifications of error should have been received, inasmuch as it showed that it would have been unconscionable for a chancellor to enforce the performance of an agreement which required the party to part with his property without the purchase-money being paid or secured : Henderson *v.* Hays, 2 Watts 148, 1 Id. 401.

The question presented by the third and fourth specifications is, whether there was such mutuality in the agreement as bound both parties so that either could enforce performance against the other. The agreement shows that there was nothing binding upon Mulvany to purchase the property at all. Such being the case, performance could not be claimed by him against Corson : Bodine *v.* Glading, 9 Harris 53; Wilson *v.* Clark, 1 W. & S. 555; Parish *v.* Koons, 1 Pars. 91; Pugh *v.* Good, 3 W. & S. 62; Brightly's Eq. 187; Elder *v.* Robinson, 7 Harris 364. The court below conceded that there must be mutuality, but avoids the effect of these rulings by holding that Mulvany, on the 28th of March 1864, made his election to take the property, which bound him to do so, and this cured the agreement, wherein before it was radically defective on the score of mutuality. As this action was founded upon and declared upon the written agreement, and not upon what Mulvany did subsequently thereto, can he recover otherwise than upon the agreement itself? He could not take all the chances between the 12th of December 1863 (date of agreement) and the 28th of March 1864, of its being an advantageous or disadvantageous purchase to him, without the other party having during the same period the same advantage. The court admitted that Mulvany was bound to nothing until March 28th, and if he had found no ore by that time, although he would have had the lot dug up, he would,

[Corson v. Mulvany.]

according to the reasoning of the court, have been under no obligation to take the property. It was, therefore, a one-sided agreement until it suited Mulvany to take it, there being no stipulation in the agreement that he was to have the right to elect to take or not take it between its date and April 1st 1864, and in truth he never did elect to take it without the joinder of the wife in the deed, until the day of trial in court, although he had written notice on the 21st of March 1864, that she refused to sign the deed. We have been unable to find a case where a chancellor would enforce specific performance under such circumstances. This court has certainly never so decided in any of their reported cases.

5. The wife's refusal to sign the deed put an end to a decree for specific performance : Weller v. Weand, 2 Grant 104, 1 Id. 255, 7 Watts 107, 143, 5 W. & S. 486, 8 Barr 363, Brightly's Eq. 192. This position was conceded in the court below, and in order to avoid the effect of the same, Mulvany on the trial offered to take the deed without the wife's joining. Now, even if it be true that the party may do so, yet in no case can it be shown that the vendor was bound to take a mortgage for part of the purchase-money on such a title. If, therefore, Mulvany had offered to pay in cash the whole purchase-money at the time of the trial, it may be that he had the right to take the deed as he proposed to do. But as he offered and insisted upon our taking the mortgage, it could only be on the interest conveyed by Hiram Corson alone. The agreement contemplated a mortgage upon a clear fee in the land. We were entitled to such a mortgage.

6. Will an action of ejectment to enforce the specific performance of a contract lie in Pennsylvania at this time ? We say it will not.

First, because ejectment is strictly an action at law. Equity was only infused into it because when this was done our courts had no equity jurisdiction. Now we have the benefit of a separate equity jurisdiction which can be resorted to in every case that requires equity to be administered.

The cases of Aycinena v. Peries, 6 W. & S. 257, and Biddle v. Moore, 3 Barr 161, which held that the remedies are concurrent, were decided many years before full chancery powers were conferred upon our Courts of Common Pleas.

The Act of 21st of March 1806, Purd. 41, provides that when a remedy is provided or duty enjoined by an Act of Assembly, the same shall be strictly pursued.

On the same 21st of March 1806, the legislature declared that "all writs of ejectment shall be in the form following and not otherwise"—(prescribing the form).

In the case at bar the writ is not in the form this act says it shall be, but has interpolated in it that the writ and action is to enforce the specific performance of a certain agreement.

The plaintiff below should be turned' over to the equity side of the court; where we can put in an answer, file a cross-bill, and require him to be put on oath, and by this means reach the equity of both sides, which cannot be so well done in an action of ejectment.

7. Specific performance cannot be enforced where the party can be compensated in damages for any injury he may have sustained by reason of a refusal to convey: North Pennsylvania Coal Co. *v.* Snowden, 6 Wright 488; Gallagher *v.* Fayette County Railroad Co., 2 Id. 102; Pusey *v.* Wright, 7 Casey 387, 1 Wright 503.

8 and 13. The eighth and thirteenth specifications present the question whether the description of the premises in the agreement, the *præcipe*, writ, *narr.*, or verdict in this case, is sufficient. That it is not, is clearly decided in Hunt *v.* McFarland, 2 Wright 71.

9. This specification raises this point: If the alleged agreement is a sale of the real estate to Mulvany, as he claims, then it requires a conveyance stamp and not a five cent agreement stamp, which is now on it. The court below seemed to concede this, but said the plaintiff might stamp it properly yet; but as he did not do it, or offer to do it, our objection remains: Brightly's Dig. Supp., p. 1395.

10. The plaintiff never offered a mortgage drawn in accordance with the facts; and as the one offered on the trial purported to be a mortgage on the lot conveyed by Hiram Corson and wife to said Mulvany, it could not be upon the lot in dispute, for that never was conveyed by them to him, unless said agreement be a conveyance, which plaintiff ignores by merely stamping it as an agreement between himself and defendant.

11 and 12. The only witness who testified to the tender is Mr. Hunsicker, who said: "Then Mr. Mulvany said he had the bond and mortgage for $800 and $200 in money to pay him for a tract of land. Dr. refused to take it. He said Mrs. C. would not sign the deed. Mr. M. asked whether he would sign the deed; he said, 'No, sir.' The papers were not read and the money was not counted."

Upon this testimony it is argued that there was a tender to the defendant of the money and papers, and an offer to take the separate deed of defendant without the signature of his wife. Yet nothing is farther from the truth. Plaintiff never did, until the day of the trial in court, offer to take a deed signed by defendant alone. There never was, before trial, any election made by Mulvany exonerating Mrs. Corson, and when he asked defendant "Will *you* sign the deed?" he answered, "No, sir;" because he had no evidence that his wife was not to be coerced.

But what is decisive on this point is the fact that the proof

[Corson v. Mulvany.]

of tender, &c., of the money, &c., before suit brought, was only proved by this one witness, which was insufficient, as it is well settled that ejectment, if it lies at all now in such a case as this, "is only a substitute for a bill, and subject to all the considerations by which a claim to have the land itself may be defeated. The case of a defendant also, is like that of a defendant in chancery, where, if the fact on which the equity of a bill arises, is denied by the answer, and the equity is proved by but one witness for the plaintiff, he can never have a decree," &c.: 2 T. & H. 252, 253.

Our plea of not guilty stands for our answer to the plaintiff's writ, which is his bill; it is his substitute for a bill; and our plea is our substitute for our answer on oath. So that as it was necessary to prove a tender, &c., they were bound to do so by more than this one witness.

15. The court should have charged the jury that there was nothing in plaintiff's case to entitle him to a decree; nothing in it but a breach of an agreement upon the part of defendant, for which full indemnity could be had by an action at law. This specification sums up all the others, any of which, it seems to us, is sufficient for our purpose.

*G. R. Fox*, for defendant in error.—1. The only question of any importance presented upon the paper-book of the plaintiff in error is completely set at rest by the notice given by Mr. Mulvany to Dr. Corson on the 28th of March. His determination of the option to which he was entitled under the agreement, fixed him as perfectly as if the original contract had contained no such option. The two writings became one instrument. See Kerr *v.* Day, 2 Harris 112, and the authorities there referred to. It is there said to be definitively settled by a train of uncontroverted authorities that equitable conversion takes place, although the election to purchase rests solely with the purchaser, whose optional right may be transmitted to his vendee, &c., and it was decided that the assignee of the equitable interest of the vendee "entitled himself to a conveyance of the land by his notice of an election to purchase within the time stipulated by the covenant." *A fortiori* is the vendee himself so entitled. Under the head of Mutuality of Consideration and Remedy, in Batten, ch. 5, p. 61, it is laid down that "it is not considered requisite that an agreement should at the time be binding on both parties; it is sufficient if an agreement, signed by one party, be afterwards accepted and acted on by the other." See also Palmer *v.* Scott, 1 R. & M. 394, Dowell *v.* Dew, Younge & Collyer 346, Stansbury *v.* Fringer, 11 Gill & Johns. 149, and Western Railroad *v.* Babcock, 6 Met. 346. Bodine *v.* Glading, cited on the other side, has no resemblance to the case at bar. It was peculiar in its

[Corson v. Mulvany.]

circumstances, and was decided on the ground that time was in that case of the essence of the contract, and that the parties having themselves agreed upon the compensation for the breach, or provided the means by which it should be ascertained, there was no room for the interference of the chancellor. Wilson v. Clark, 1 W. & S. 554, was a case of a parol contract, and therefore within the Statute of Frauds, and was decided expressly on the ground "that no memorandum of the bargain has been put in writing, or signed by either party." Pugh v. Good decides that delivering possession of land in pursuance of a parol contract, amounts to part performance, and either party may insist on its specific execution. Graham v. Pancoast was a case of fraud, gross inadequacy of price, and other circumstances of suspicion. The bill was not for specific performance, but for rescission of the contract. In Elder v. Robinson, a lessor stipulated with his lessees in the lease, that when the lands were offered for sale, the first offer should be made to them on terms as favourable as the lands should be offered to any other person. Held that this stipulation gave the lessees no title or interest in the land, but created only a personal obligation. There was no offer to purchase at any price nor the tender of any money, nor was there a time limited in the agreement nor a price specified.

2. The argument that the refusal of the wife to execute the deed exonerated the husband from performing specifically his contract, so far as he was able, is not sustained by authority, and the principles of equity are all in opposition to it. See Clark v. Seirer, 7 Watts 110; Shurtz v. Thomas, 8 Barr 363; Adams's Eq. 110; Batten on Spec. Perf. 299; Story's Eq. §§ 775, 779; Young v. Paul, 2 Stock. Ch. 414. The cases cited by the plaintiff in error on this point do not sustain his position.

3. In reply to the argument that ejectment will not lie, it is sufficient to say that the legislature are not of that opinion. In addition to all prior legislation on the subject, they as recently as the 2d of April 1863, passed an act providing that "in any action of ejectment brought to compel specific performance of a contract for the sale and conveyance of lands," writs of estrepement may issue without security: Brightly 1312. What is stated in the argument of the plaintiff in error under this head in regard to the writ is incorrect. It is in the precise form prescribed by the act.

4. As to the point that specific performance cannot be enforced where the party can be compensated in damages, it is perhaps enough to say that the abstract proposition is not denied. It can have no application, however, to this case. Nothing can be more uncertain than the value of a mineral lode or pocket, and to estimate the loss would be a sheer impossibility. The law

[Corson v. Mulvany.]

of the case, as settled for a century by an unbroken chain of cases in England and America, is well summed up in 2 Story's Eq. 746, 747, 790.

5. As to the alleged uncertainty of the description, Hunt v. McFarland, cited by plaintiff in error, has no application. The court there say, "the dispute between the parties arises about the south boundary of the plaintiff's land, which is the defendant's northern boundary;" and thus the very point to be settled by the jury was left uncertain. The court remark: "If the jury had found for the plaintiff by a straight line from the maple to the chestnut corner, as they doubtless intended, it would have been sufficient, for this could have been made certain." The certainty required is such as will enable the sheriff to deliver possession. Here the property is bounded by a public road leading from Marble Hall to Spring Mill, and by lands of Joseph Freas, Daniel Freas, and James Sampson. This was accurately set forth in the writ and declaration, and the correctness of the description was proved by Bisbing, and by the deed from Lentz and wife to Dr. Corson, under which the latter held title, which described the lot by metes and bounds.

6. The other errors assigned do not seem to require particular notice.

The opinion of the court was delivered, February 6th 1865, by

AGNEW, J.—Corson agreed that Mulvany should be permitted to dig five shafts on his lot in search of iron-ore, between the date of his agreement and the 1st of April following, and if then Mulvany desired to purchase the lot at $1000, he should have the right and privilege of doing so; the purchase-money to be paid, $200 in execution of the deed, and $800 in two years thereafter, with interest, and to be secured by mortgage on the premises.

The first and second assignments of error will be considered together. Corson offered to prove that, by the ordinary process of mining ore, the land would be so dug up within two years as to be valueless; and to prove the amount of unsatisfied mortgages and judgments against Mulvany. The rejection of this evidence is alleged to be error, because such facts it is said would have induced a chancellor to withhold a decree for specific performance, which is of grace and not of right.

It is not alleged that Mulvany's circumstances had changed after the making of the contract, and we are asked to withhold relief merely because of consequences growing directly out of the terms of the agreement. There is no proof of fraud or unfairness, nor is there any of weakness of intellect, intoxication, surprise, or any circumstance affecting the capacity of Dr. Corson

13 WR.—7

[Corson *v.* Mulvany.]

to contract.   His whole case is, that he agreed to sell his lot and defer the payment of $800 of the purchase-money for two years, on the security of a mortgage alone, and that within this time all the ore may be removed from his lot.   This was a consequence plainly within his view, in making his contract.   Its purpose was to test the lot for the presence of ore.   His object was to do this at Mulvany's expense, and if ore were found, to obtain a higher price for his lot.   Mulvany was willing to do this, provided, if he found ore, he should have a right to purchase.   These are the manifest inferences to be drawn from the contract itself.   Now, after ore has been discovered in the fifth and last shaft, he asks Mulvany to be turned away without obtaining the very thing which induced him to expend his means in experimenting.   Corson did not bind himself to pay the outlay.   How can a chancellor refuse his aid in so plain a case?   We see no error in the rejection of the evidence.

The third and fourth errors assert, that the contract is not mutual, because an option was given to Mulvany only to convert the privilege into a purchase.   If this be true, it will prevent specific performance, for, it is settled, equity will not enforce specific performance where the remedy is not mutual.   Both parties have signed and sealed this agreement, and the language of the instrument clearly imports a covenant on part of Mulvany to pay the purchase-money, if he elects to purchase.   The language of a writing may be wholly that of a vendor, yet the vendee's sealing or accepting it will bind him, and whether the action against him should be case or covenant is not material: Dubbs *v.* Finley, 2 Barr 397; McFarson's Appeal, 1 Jones 504–10; Campbell *v.* Shaw, 3 Watts 60; Cott *v.* Selden, 5 Id. 525; Meade *v.* Weaver, 7 Barr 330, 331.   In the last-named case, the effort of Chief Justice Gibson was to show that *covenant* would not lie when the party had not sealed the writing; however, debt or *assumpsit* might.   The English authorities cited in that case conclusively show that the entry of the grantee, or his acceptance of a deed-poll, are equivalent to sealing, and covenant will lie.

Then the naked question is, whether, in a mutual contract to give an option, the party who gives notice of his election is bound to performance.   To assert the negative is simply to deny the power of making a conditional contract, and of declaring that performance shall take place when the contingency happens. If one contracts to purchase a vessel at sea upon her safe arrival in port, no one will dispute that an obligation to deliver on one side, and to pay on the other, arises upon her safe arrival.   The vessel may never arrive, and the contract is not absolute to performance on either side till the contemplated contingency occurs;

[Corson v. Mulvany.]

but the contract is binding, and only awaits the event, to become binding also to performance.

Now, as a contingency or condition on which performance is suspended, what difference is there between a contingency depending on the action of third persons or the controlling power of Providence, and one depending on the act of one of the parties? The uncertainty which attends the contingency exists in either case. The vessel may not arrive, or the party may not elect, but if either event takes place, the contingency has occurred. A choice or an election is but a fact, and wherein does it differ from any other fact made the condition of performance? The agreement is mutual. One says, I will sell if you conclude to purchase; the other says, I will pay if I do conclude to purchase. He then resolves and says, I have concluded. The contingency upon which performance was rested has happened. Why are not both bound? One would think it a plain case of mutual obligation, to perform on the happening of the event which was fixed as the condition of performance. The buyer tenders his money, and, clearly, the seller is bound to receive it. By the very offer to pay, the purchaser not only recognises the obligation of his previous assent to the contract, but the happening also of the fact on which his obligation to perform rested. The offer or tender is not itself the election, it is but the consequence of it. Election and notice of it precede the tender.

At this point a new and ingenious turn is given to the argument. It is said, But, if the seller refuse to accept the tender, the purchaser may retract; he is not bound, and of course the remedy is not mutual. But the fallacy lies in this; he is not bound, not because no obligation to perform arose in his election, but because he sets up the seller's breach of contract by refusal, as a discharge of the obligation. The obligation was there, but because the seller chose not to recognise it, the purchaser now chooses to be discharged from it.

Take a better test. The purchaser writes to the seller, I have concluded to take your property according to our contract. I will have a deed prepared for your execution, and a mortgage according to the terms, and will meet you to perform our bargain. Will it be said, that after this explicit notice of his election, the purchaser can fly from his contract without a refusal of the seller to accept performance? Then, how can the seller avail himself of his own refusal, as a ground of non-performance, so long as the purchaser declines to avail himself of the discharge which the refusal affords?

The error into which the opposite argument runs is in supposing that election is the initiation of a new contract, instead of the stipulation on which performance of an old one rests. It is the idea of a proposition which may be retracted before

[Corson *v.* Mulvany.]

acceptance, and no contract arises: forgetting, that here there is a contract for election, which prevents a refusal to accept. Therefore, it is said, there can be no obligation without the consent of the other. This loses sight of two facts: first, that a previous assent has been given; and second, that the party notified of the election has no right to dissent. The party is already bound to accept performance, when the election shall be made, and when made his previous assent attaches. He may refuse, it is true, but it is not to decline a proposition, but to refuse performance of a bargain. If it were the initiation of a new contract, as if one should voluntarily offer me his bond, he would not become my debtor until I accept it. I am in no obligation to receive his bond, but if I had bound myself to receive his bond in performance of some stipulation already agreed upon, I would find it difficult to refuse it.

If this case stands in need of authority, it has one directly in point. In Kerr *v.* Day, 2 Harris 112, the agreement was a lease for three years at a certain rent, with the privilege of buying the lot at any time during the term, at the price of $1200, in such payments as might be agreed on, not exceeding ten years from the date. The title passed into Day, a purchaser from the lessors, and the lease into the hands of a second assignee of the tenant. The first assignee gave notice of his election to Day, the purchaser. The opinion of this court was delivered by Bell, J., holding that the title vested upon notice of the election in equity, and operated as a conversion of the lessor's estate into personalty, that the election by the assignee was good against the alienee of the lessors, and he became liable to specific performance, and, moreover, was bound to take notice of the right of election contained in the lease. Kerr *v.* Day has this feature to weaken it, that the instalments were not defined in the agreement, but left to be settled at a period not exceeding ten years. This, no doubt, led to the remark in Elder *v.* Robinson, 7 Harris 365, of Lowrie, J., who had decided Kerr *v.* Day in the lower court, that the principle was strained to its utmost in Kerr *v.* Day. But he did not deny its authority. In the present case there was nothing left open in the contract, and as soon as Mulvany made his election, his duties under the agreement were fixed and certain. The opinion of Justice Bell is referred to for numerous authorities examined in detail.

Wilson *v.* Clark, 1 W. & S. 554, and Bodine *v.* Gladding, 9 Harris 50, have no bearing on this case. They were clear cases of a want of mutuality, where the Statute of Frauds in the one, and abandonment of the contract in the other, caused the agreement to be not binding. Admitting to the fullest extent the doctrines of these two cases, that want of mutuality is a bar to specific performance, either upon a bill in equity or an ejectment,

[Corson v. Mulvany.]

we are of opinion there is no want of mutuality in the contract between these parties.

We see no error in the fifth assignment. It is in the power of a party to waive full performance, and accept such title as the vendor is able to give. Mulvany's waiver, therefore, of a release of dower by Corson's wife, took away the force of the objection that she refused to sign a conveyance.

The sixth error raises the question, whether the common law remedy by ejectment, used as a means of specific performance, is taken away by the grant of equity powers to the Courts of Common Pleas. Clearly, the legislature did not intend to take away common law actions by a grant of equity jurisdiction. The Act of 1806, providing that when a statutory remedy is given it must be pursued, does not apply. The law refers to specific remedies given for special cases. But the grant of equity jurisdiction is simply a grant of certain general equity powers in addition to powers already existing, and not in exclusion. It is rather a novel idea that equity, which is admitted to moderate the law, is to supersede it altogether. It is not necessary to notice the remaining assignments of error in detail; it is sufficient to say that in none of them do we discover any error.

The judgment is affirmed.