## Childs, Appellant, *v.* Gillespie.

[Marked to be reported.]

*Oil lease—Option.*

An oil lease of a portion of the lessor's farm contained the following clause : "It is further agreed that, after the first well is completed, provided it is a paying well, said second party (Childs), shall have the privilege of buying or leasing the unleased remainder of said Schuler's farm, provided he and said Schuler can agree upon terms within six months."

*Held,* that the clause did not confer an option in the ordinary sense of the word, as it provided no terms upon which a purchase or leasing could be made.

*Contract—Offer by telegraph—Acceptance.*

The above lease was executed on December 26, 1889. On April 5, 1890, Schuler wrote to Childs : "I am offered $175 an acre and one sixth royalty. As I agreed to give you first chance I want an answer by the 9th, or I will go ahead and lease." The letter did not reach Childs until the 10th. On April 7, Schuler telegraphed to Childs : "Offered $7,000 and one sixth, remainder of farm. Answer immediately." meaning that he had been offered $7,000 and a royalty of one sixth for the remainder of the farm, and that Childs could have it at that price if he answered immediately. The telegram was received by Childs on the forenoon of the same day. On April 8, Schuler sold to other parties. On April 9, Childs learned of the sale and sent a letter accepting the offer in the telegram. Subsequently he tendered the purchase money to Schuler. *Held,* that the acceptance was too late.

Argued Oct. 30, 1891. Appeal, No. 212, Oct T., 1891, by plaintiff, from judgment of nonsuit of C. P. No. 1, Allegheny Co., June T., 1890, No. 720. Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Ejectment by R. H. Childs and others against T. A. Gillespie and others to recover forty acres of land in Robinson township.

The facts are stated in the opinion of the Supreme Court. The court entered a compulsory nonsuit. Plaintiff appealed. *Error assigned* was the entry of judgment of nonsuit.

*B. J. Reid* and *J. W. Lee*, with them *George S. Criswell* and *Lawrence W. Bigham*, for appellants.—The suit properly lies against Schuler's vendee. Specific performance will be decreed against all who stand in privity with the party contracting: Brinker v. Brinker, 7 Pa. 53 ; McClure v. McClure, 1 Pa. 378 ; Corson v. Mulvany, 49 Pa. 100 ; Champion v. Brown, 6 Johns. Ch. R. 402 ; Bispham's Eq., sec. 365 ; Kerr v. Day, 14 Pa. 116 ; Jaques v. Weeks, 7 Watts, 261 ; Maul v. Rider, 59 Pa. 167 ; Hottenstein v. Lerch, 104 Pa. 454.

Schuler being bound by the contract of December 26, 1889, was not free in his action and could not demand of Childs that he should accept immediately the offer contained in the telegram.

Time in a contract to be held essential must be reasonable, and equity will relieve against it where it will give one party an unconscionable advantage: Tiernan v. Roland, 15 Pa. 438 ; Taylor v. Longworth, 14 Pet. 174; Brightly's Eq., p. 190. " Forthwith," in an offer, means such promptness, as, under the circumstances, is reasonable: 2 Whart. Con., sec. 886 ; Leake on Cont., 2d. ed. 839 ; Hudson v. Hill, 43 L. J. C. P. 273. " Immediately" in contracts and in legal proceedings means such convenient time as is reasonably requisite for doing the thing: Richardson v. End, 43 Wis. 316 ; Gaddis v. Howell, 31 N. J. L. 313 ; McLure v. Colclough, 17 Ala. 89.

The acceptance was made within the time limited in the letter, viz. : April 9th, the contract being binding from the time of posting: Hamilton v. Ins. Co., 5 Pa. 343 ; Tayloe v. Ins. Co., 9 How. 400 ; 1 Pars. Con., 6th ed. 484.

Both the letter and telegram must be taken in connection with the lease of December 26th, to which they refer, and out of which they grew. An accepted offer may be specifically performed, although it appears from it that the parties provided for the execution of a more formal contract: Blaney v. Hoke, 14 Ohio St. 292; Pratt v. R. R. Co., 21 N. Y. 305; Fowle v. Freeman, 9 Ves. Jr. 351; Forster v. Hale, 3 Ves. Jr. 696; Thomas v. Dering, 15 Eng. Ch. R. (1 Keen) 729; Floyd v.

Storrs, 144 Mass. 56; Bispham's Eq., 4th ed. 440 (sec. 377); Pritchard v. Ovey, 1 J. & W. 396.

The contract of December 26th, being an option, does not on that account lack the mutuality required to entitle plaintiffs to specific performance: Kerr v. Day, 14 Pa. 112; Corson v. Mulvany, 49 Pa. 99; Napier v. Darlington, 70 Pa. 67.

*J. S. Ferguson, P. C. Knox* and *E. G. Ferguson,* with him for appellees.—The contract of December 26, 1889, could not be specifically enforced: Elder v. Robinson, 19 Pa. 364. A contract for the sale of lands is within the statute of frauds and therefore void and unenforceable, if parol testimony be required to establish any essential part of it: Ferguson v. Staver, 33 Pa. 413; Hammer v. McEldowney, 46 Pa. 334; Mellon v. Davison, 123 Pa. 298. An agreement to be specifically enforced must contain the exact terms of the contract and a description of the property: Holthouse's Appeal, 11 Cent. 157; De F. Ballou et al. v. March, 143 Pa. 64.

As the offer contained in the telegram was not accepted, Schuler had a right to revoke it. A mere offer to sell real estate upon specified terms may be withdrawn at any time before its acceptance: Ryan v. United States, 136 U. S. 68. A proposition may be modified or withdrawn before it is accepted: C. H. & I. R. R. Co. v. Clifford, 113 Ind. 460: Bishop on Contracts, sec. 325; Wharton on Contracts, sec. 10; B. & M. R. R. Co. v. Bartlett, 3 Cush. 225. It is not pretended here that there was any acceptance of any sort until after the offer was withdrawn.

OPINION BY MR. JUSTICE WILLIAMS, January 18, 1892.

This action is, in legal effect, a bill for specific execution. Unless the plaintiff presents a case upon which he would be entitled to a decree in equity, he is not entitled to a verdict. The facts are, that, in December, 1889, Schuler, in an agreement in writing, known as an oil lease, granted all the oil and gas in thirty acres off one side of his farm to Childs, giving him an exclusive right to operate upon the surface. The land was to be divided into three parts, containing ten acres each. A well was to be put down upon one of these subdivisions within six months; another within twelve months; upon the third, within eighteen months from the date of the agreement.

The royalties to be paid the lessor, and the general plan of operating by the lessee, were fixed by the written agreement, at the conclusion of which was the following clause : " It is further agreed that, after the first well is completed, provided it is a paying well, said second party shall have the privilege of buying or leasing the unleased remainder of said Schuler's farm, containing about forty additional acres provided he and said Schuler can agree upon terms within six months." The forty acres, covered by this clause, is the land described in the writ, and the right of the plaintiff to recover depends upon the construction of this part of the agreement. Treating it as an option, it does not take effect, according to its terms, until two conditions have been met, viz., the completion of the first well, and its turning out to be a paying one. When these contingencies are out of the way, the option is in the alternative, to buy or lease, but the right to determine which it shall be, is in Schuler, not in Childs. When this alternative has been settled, there are yet no terms upon which a purchase or leasing can be made. These are also to be fixed by Schuler, at the time he determines whether he will sell in fee, or sell the oil on royalty, by lease of the surface for oil purposes.

If the terms can be agreed upon, within six months after the first well is completed and proves to be a paying one, then Childs may become a vendee, or lessee, as the case may be, by complying with them. It is quite clear, that this is not an option in the ordinary sense of the word. It does not offer the forty acres to Childs upon terms of purchase, or of lease on royalty, that he may accept within a time limited, and so become, by virtue of such acceptance, a purchaser or lessee. It does not fall within the rule laid down in Corson v. Mulvany, 49 Pa. 88, and Napier et al v. Darlington, 70 Pa. 64.

The plaintiff contends, however, that it has been supplemented by a letter and telegram, by which Schuler has waived the completion of the first well, and determined his election whether to sell or lease, and named definite terms upon which he would lease at once. He alleges that these terms have been accepted by him, and that he is, by reason of such acceptance, a lessee of the land, and entitled to possession of the same.

The facts are admitted to be as follows : On April 5, 1890,

before Childs had begun operations on the first well, Gillespie et al. made Schuler an offer for a lease of the forty acres, which he was willing to accept. He accordingly wrote to Childs on that day : "I am offered $175 an acre and one-sixth royalty. As I agreed to give you the first chance, I want an answer by the ninth of the month, or I will go ahead and lease." This letter reached Warren, where Childs lived, after he had left for Pittsburgh, on the seventh, and was forwarded to that city, reaching him on the tenth. Meantime, Schuler telegraphed Childs on the seventh : " Offered seven thousand and one-sixth remainder of farm. Answer immediately." This was received by Childs at Warren, during the forenoon of the seventh, but he made no reply. That day he started for Pittsburgh by rail, reaching there in time to enable him to call on Schuler and his attorney during the eighth. He there learned that the lease to the Gillespies had been completed before the close of the preceding day. On the ninth he prepared and served a written acceptance of the offer made in the telegram, and tendered the $7,000 to Schuler, or his agent. As the letter of the fifth had not been received when this acceptance and tender were made, it really plays no important part in this case. The acceptance refers to the telegram only. It is as follows : " I hereby accept your proposition to pay you seven thousand dollars for the lease of the forty acres, and demand that you execute and deliver to me said lease, for said forty years, as per your telegram of the second."

Treating this as Mr. Childs treated it, our question is, whether this is an acceptance such as binds Schuler.

The telegram stated the terms offered, and said : " Answer immediately." Mr. Childs chose not to answer immediately, and not to answer at all in the way or by the means of communication, which he knew he was expected to employ.

The hours passed, the parties were waiting, and, as Childs did not accept, Schuler made the lease to others. On the ninth, with full knowledge of all that had transpired meantime, the formal acceptance and tender were made. This acceptance came too late ; Childs should have replied on the seventh, as the terms of the offer required. The offer was not an open, indefinite one, but definite in all its terms.

He had no more right to modify it as to the time within

which it must be accepted, than as to the price at which it was offered. The telegram, translated into the language of an ordinary contract, said to Childs : " I have an offer for the forty acres adjoining your lease, of $7,000 bonus, and a royalty of one-sixth of the oil. I will give you the refusal at that price, if you will let me know at once, so that, if you do not take it, I may not lose the offer made by the parties here. I must have your answer immediately."

If the offer was not accepted with reasonable dispatch after its receipt, it imposed no obligations whatever upon Schuler. If he accepted the offer to which he referred in his telegram, or withdrew the land altogether from the market, Childs could not complain; but would have been left to stand as he would have stood if no telegram had been sent him, upon the terms of his contract as originally made. Not having accepted the terms offered him within the time required, he has no contract resting on the telegram. He has therefore no contract which can be specifically enforced at this time. The judgment is affirmed.