## ESTATE OF LUTHER MARTIN, DECEASED.

### APPEAL BY R. S. WILLIS FROM THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued March 26, 1889—Decided January 6, 1890.
[To be reported.]

1. No legal or moral obligation is created by the expression of an honest belief respecting a business enterprise to a person contemplating an investment therein; and, the giving of advice, after the investment is made, favorable to such investment, raises no duty which will constitute a sufficient consideration for a promise to reimburse the investor for any loss upon it.

(a) A decedent's son Robert wrote to a claimant against the estate, recommending an investment in the stock of a corporation with which both Robert and the decedent were connected, and the latter added to the letter a note stating his belief that all its statements were correct: on the strength of these recommendations, which were made in good faith, the claimant invested in the stock.

(b) Afterwards, becoming dissatisfied on learning that the company's plant was uninsurable, he sent his certificate of stock to the decedent, directing him to sell it and remit the proceeds. The decedent replied,

acknowledging its receipt, and adding: "Whether the stock is sold or not, give yourself no uneasiness as to fire or otherwise. I will see that Robert makes you whole." The company was then insolvent and soon after stopped payment:

2. As the correspondence between the claimant and the decedent in regard to selling the stock, disclosed no consideration for the promise to see that the claimant was made whole, that promise, whether regarded as a guaranty or as an original undertaking, imposed upon the decedent and his estate no liability to reimburse the claimant for the loss sustained upon the investment.

Before PAXSON, C. J., STERRETT, CLARK, McCOLLUM and MITCHELL, JJ.

No. 121 July Term 1888, Sup. Ct.; court below, No. 503 October Term 1886, O. C.

On March 22, 1888, in the matter of the audit of the account of the executors of the last will and testament of Luther Martin, deceased, the auditing judge, ASHMAN, J., filed an adjudication, passing, inter alia, upon a claim presented against the estate of the decedent by Richard S. Willis. The part of the adjudication relating to this claim, and containing the auditing judge's findings of fact and law respecting the same, was as follows:

Mr. Page represented the claim of Richard S. Willis, amounting to $6,500 with interest.

Robert W. Martin, a son of the testator, was secretary and treasurer of the Martin Color & Chemical Co., and in April, 1886, sent a statement of its operations, couched in the most sanguine terms as to prospective profits, to the claimant, who resided in Texas, and was related to testator. To this letter of his son, the testator himself added these words: "I have carefully read this letter, and believe every statement therein to be strictly correct." The joint commendation of the enterprise induced the claimant to invest the sum of $12,500 in the purchase of 250 shares of stock in the corporation. A certificate for the stock was sent to him by Mr. Martin, Jr., May 10, 1886.

About the first of the next month the claimant visited Philadelphia, and saw the buildings in which the company stored its oil. He was impressed with their apparent insecurity against fire, and remarked to testator's son, that "the thing

was a tinder-box," and that he would sell his stock for half its cost. On June 18, 1886, he wrote from Texas to the testator, thus: ."Referring to a conversation I had with your son Robert, about the two hundred and fifty shares I hold in the Martin Color & Chemical Co., I enclose certificate of same, No. 16, for said two hundred and fifty shares, and I ask you to dispose of it and remit the proceeds to the Hanover National Bank, New York, for my credit. Please dispose of it promptly, as I dread the fire risk. Doubtless Robert has fully explained to you my views in the matter."

In reply, the testator, on June 25, 1886, acknowledged the receipt of the certificate and added: " Whether the stock is sold or not, give yourself no uneasiness as to fire or otherwise. I will see that Robert makes you whole." The claim is founded upon this promise.

It was in evidence that when the claimant was in Philadelphia, in June, 1886, he was told by Robert, the son, that the company was in difficulties, owing to the scaling of prices by rivals. It failed June 20, 1886, and eventually settled with creditors at ten or fifteen cents on the dollar. Mr. Robert Martin, as its treasurer, in July, 1886, sent $6,252 to the claimant, in part repayment of his purchase of stock. The certificate of stock belonging to claimant remained in the custody of the testator until his death. It was not alleged that the testator made any attempt to sell it; and it may be stated, as a fact, that, owing to the failure of the company, the value of the stock was greatly impaired before it reached the testator. Under the view which will be taken of the transaction, the latter circumstance is not material.

It is evident from this narration that no contractual relation of any sort existed between the claimant and Robert Martin, the son; and all semblance of fraud was admitted on the argument to be out of the question. The son suggested to his relative an investment which he believed was profitable, and in which he had placed his own fortune; and the claimant acted on the suggestion with the single purpose of benefiting himself. Neither the son, by his letter advising the venture, nor the father, by his indorsement of that advice, assumed any duty towards the claimant; and the claimant in his turn could impose no duty upon the testator, by returning to him the certi-

ficate. The latter was not bound to receive it, and he was not bound to sell it. He was sought to be made a bailee, and he could have refused the bailment. But he did not refuse it. On the contrary, he accepted it in its length and breadth, and he even went further; he agreed so to dispose of the stock that no loss should accrue to the owner. That promise, if the claimant chose to rely on it, left him nothing to do; and the very fact that he did nothing shows that he relied upon it. He might have repudiated it and insisted upon the sale; but he waited, because, whether the stock was sold or not, he was to be at no loss; and of the propriety of a sale the testator had undertaken to be the sole judge.

It matters very little in what shape the promise was moulded; the only points which press being, whether it was an original undertaking by the promisor, and whether it was supported by a sufficient consideration. Its language was: "I will see that Robert makes you whole." But the writer knew that Robert was not obliged to make the claimant whole, and, unless he intended to deceive by means of a quibble, he meant to say, "I will do what I admit Robert is not obliged to do." That he meant to shoulder the absolute obligation himself is shown by the rest of his offer. The stock had been sent to him to be sold. He accepted it, but reserved the right to sell it, or hold it; and as an equivalent for that option, he bound himself to see that the claimant was made whole. Here was the consideration: the claimant was to give himself no uneasiness; that is, he was to abandon his request for an immediate sale, and accept in lieu the risks of an uncertain future and of a possible total loss.

The authorities which counsel for the claimant collected in a brief to which this hasty adjudication does scant justice, show that, whether the contract of the testator was one of suretyship, or was an original undertaking, it was equally binding. In Mountstephen v. Lakeman, L. R. 7 Q. B. 200, the defendant agreed to see that plaintiff was paid by the board of which defendant was chairman, for work done by plaintiff, for which, as both parties knew, the board was not liable; and the promise was held to import a primary liability on the part of the defendant. In the present case, it was contended at the audit that the offer by the testator was at most a guaranty that if

Opinion of Court below.

Robert did not, the testator would, make the claimant whole, and hence that recourse to the son should have been first had and exhausted. But, as in the case of oral promises to pay the debt of another, the question dividing a guaranty from a suretyship is, does any liability in the original debtor remain, or, rather, has the new promisor become the actual debtor? Maule v. Bucknell, 50 Pa. 39. Here, if there was any liability in the son, it ceased to be recognized by the claimant when he sent the certificate to the testator, and rested upon the testator's promise to settle. As the claim will be considered upon exceptions by the court in banc, the adjudication need not be prolonged. The claim is admitted.

Exceptions to this adjudication were filed by the executors of the decedent. The court after argument sustained the exceptions and dismissed the claim (ASHMAN, J., dissenting), FERGUSON, J., filing an opinion, which after stating the facts proceeded:

It was admitted at the audit that there was no fraud in this transaction. The auditing judge has so found, and that finding has not been excepted to; so that the consideration of that element in this transaction is removed. The only other question to be considered is, whether there was any consideration for the contract of the decedent to make the claimant whole; for a promise for which there is no consideration cannot be enforced at law. As the alleged assumption by the decedent is not under seal, it is not necessary to consider whether it is an original undertaking or a mere guaranty. A consideration is necessary to support it in either case, and the burden of proving the consideration is upon him who seeks to recover.

In this case, the auditing judge has found that there was a sufficient consideration, in that the decedent chose to exercise the option of withholding the stock from sale, contrary to the express direction of the claimant to sell at once, and that the decedent, thus reserving to himself the right to sell or hold, bound himself to the claimant as an equivalent for this privilege, to see that he was made whole. This inference is drawn from the words which the decedent used in his letter, "whether the stock is sold or not," which would seem to imply that he could sell the stock. But, when we consider that this letter

was written on June 25th; that he had received the stock only the day before, and that the company had become hopelessly bankrupt on the 20th, it will be seen that the decedent had no option in the matter. There was no market for the stock. The claimant's order to sell might be ever so peremptory, and the decedent's efforts ever so great, but the stock could not be sold. It is at least for the claimant to show that a sale was then possible, and that the decedent made no effort to comply with his order. We are not to charge a decedent's estate upon mere inferences; and, to find a consideration in this case, we must infer not only that the stock could have been sold, but, also, that the decedent withheld the sale for some purpose of his own, whereby he was benefited or the claimant injured, while all the facts of the case show the contrary.

This letter made no change in the status of the parties in the slightest particular. The claimant was then the owner of the stock, and had been for some time. He had previously bought and paid for it. The company was then bankrupt. Its stock was worthless. There was nothing that either of these parties could do, or refrain from doing, that would change the condition of affairs with reference to this stock. There was no loss or benefit moving either way. Where, then, was the consideration for this promise?

It is contended that the decedent's indorsement of his son's letter was the inducement whereby the claimant parted with his money, and that there was a moral obligation upon his part sufficient to support a consideration for his subsequent promise to have him made whole. There can be no doubt that the facts show such a moral obligation as would be recognized by most men, and perhaps the decedent, if he had lived, would not have assumed the position which those who now represent him have taken, but we must deal with this case as we find it.

Mr. Baron Parke, in Jennings v. Brown, 9 M. & W. 501, says, "A mere moral consideration is nothing;" and all the text books agree that a moral obligation will not support a promise, unless there was once a legal obligation, which has been lost by lapse of time or otherwise, or, what but for some technical rule of law would be a legal obligation; as where a debt is barred by the statute, or a man discharged under the bankrupt law, or released by his creditors upon the payment of part

of their claims. There must have been a prior subsisting legal obligation : Sharswood's Com. Law, 37 ; Parsons on Contracts, 358 ; Addison on Contracts, 20 ; Pollock on Contracts, 69.

This is the rule in this state, excepting that it has been extended so far that it has been held " that a benefit derived from the unsolicited services of another, creates a moral obligation sufficient to sustain an express promise : " Landis v. Royer, 59 Pa. 98 ; Cunningham v. Garvin, 10 Pa. 366. In Hemphill v. McClimans, 24 Pa. 367, it was held that a promise made by a married woman was, as a moral obligation, a sufficient considertion for her express promise after discoverture ; but this decision was afterward criticised by the Supreme Court in the case of Paul v. Stackhouse, 33 Pa. 306, as a mischievous precedent, and it was there held that " there was no doubt a moral obligation to pay for labor which she had induced others to expend for the benefit of her son, but like most moral obligations it was enforceable in foro conscientiae, rather than in a court of law." This is the conclusion which we have reached with reference to the moral obligation which existed in this case.

The exceptions are sustained.

Thereupon the claimant took this appeal, specifying that the court erred : 1. In dismissing the appellant's claim. 2. In not awarding to him $6,250 with interest from May 10, 1886.

*Mr. S. Davis Page* (with him *Mr. Edward P. Allinson* and *Mr. Boies Penrose*), for the appellant :

1. The letter of June 25, 1886, must be construed to be an original assumption on the part of Luther Martin to see Willis whole in any event, and not merely an offer of guaranty : (*a*) Because there was no legal liability, actual or prospective, real or supposed, on the part of Robert W. Martin to repay to Willis the value of the stock, or his outlay in case of loss : Mountstephen v. Lakeman, L. R. 7 Q. B. 200, affirmed in House of Lords, L. R. 7 Eng. & Ir. App. 17, the facts of which bear a striking resemblance to the case at bar : De Colyar on Guaranties, *184 ; 1 Pothier on Contracts, Evans's ed., 229 ; Harris v. Huntbach, 1 Burr. 373 ; St. Albans Bank v. Dillon, 30 Vt. 126 (73 Am. Dec. 295) ; Wiggins' App., 100 Pa. 159 ; Yorkshire Ry. W. Co. v. Maclure, L. B. 19 Ch. Div. 491 ; Chambers v. Rail-

road Co., 5 Best & S. 588, 612. (b) Because the words of the letter import a direct liability for the performance by Robert of the act specified, and not merely an undertaking for liability to perform it: Reigart v. White, 52 Pa. 438; Korn v. Hohl, 80 Pa. 333; Amsbaugh v. Gearhart, 11 Pa. 482; Cochran v. Dawson, 1 Miles 276; Girard L. Ins. Co. v. Finley, 1 Phila. 70; Campbell v. Baker, 46 Pa. 243; Street v. Silver, 1 Bright. 96; Roberts v. Riddle, 79 Pa. 468; Riddle v. Thompson, 104 Pa. 330; Allen v. Hubert, 49 Pa. 259; Marberger v. Pott, 16 Pa. 9; Scott v. Swain, 19 W. N. 547; Sherman v. Roberts, 1 Gr. 261; McMillan v. Bank, 32 Ind. 11 (2 Am. Rep. 323); Loew v. Stocker, 68 Pa. 226.

2. The offer contained in the decedent's letter of June 25th, was sufficiently accepted on the part of Willis by his not forcing the sale of the stock, since this was the performance of the condition upon which the decedent agreed to be bound: Hare on Contracts, 304; Weaver v. Wood, 9 Pa. 220; Reigart v. White, 52 Pa. 442; Cochran v. Dawson, 1 Miles 277; Eddowes v. Niell, 4 Dall. 134; Clark v. Russel, 3 W. 217. The danger to Willis of ultimately losing the money invested, through not forcing a sale, and the supposed benefit to Robert, or to the company, or both, constituted a sufficient consideration for the decedent's assumption: De Colyar on Guaranties *20; 2 Kent Com., *465; Walstrom v. Hopkins, 103 Pa. 118; Bank v. Klingensmith, 7 W. 523. To make out this consideration, it was not necessary to establish the fact that the stock could have been sold after June 25, 1886. So to hold is to go into the adequacy of the consideration; whereas the test in all cases is, did the promisor get what he bargained for? Was the condition upon which he was to be bound performed? See Hare on Cont., 217, 225; Smith v. Smith, 13 C. B., N. S., *429; Fuller's Case, Godbolt 94; Bainbridge v. Firmstone, 8 Ad. & E. 743; Hall v. Conder, 89 E. C. L. R. *22, *54, *55; Haigh v. Brooks, 10 Ad. & E. 309, 320; Hind v. Holdship, 2 W. 104; Clark v. Russel, 3 W. 215, 217; Downing v. Funk, 5 R. 69, 73; Spangler v. Springer, 22 Pa. 454.

3. The abandonment, suspension, or forbearance of any right by the promisee, no matter how slight or how disputable, is a sufficient consideration for the promise: Whart. on Cont., § 505; Bradshaw v. McLaughlin, 39 Mich. 480; Spangler v. Springer,

22 Pa. 454; Downing v. Funk, 5 R. 73; Smith v. Algar, 1 B. & Ad. 603; Pullin v. Stokes, 2 H. Bl. 312; Giles v. Ackles, 9 Pa. 147; Farmer v. Stewart, 2 N. H. 97; Caldwell v. Heitshu, 9 W. & S. 51; Silvis v. Ely, 3 W. & S. 428; Chahoon v. Hollenbach, 16 S. & R. 425; McCoy v. Hutchinson, 8 W. & S. 66; Jones v. Horner, 60 Pa. 214, 217; O'Keson v. Barclay, 2 P. & W. 531; Cann v. Cann, 1 P. Wms. 723; Stapilton v. Stapilton, 1 Atk. 10; Callisher v. Bachoffscheim, L. R. 5 Q. B. 449; Sykes v. Chadwick, 18 Wall. 141. Whether any actual injury results to the one party, or any actual benefit to the other, by the forbearance, is immaterial: Smith v. Algar, 1 B. & Ad. 603. It is not incumbent on the promisee to show that the right forborne or suspended could have been exercised to advantage: Wormer v. Water Works, 50 Iowa 262; Lent v. Padelford, 10 Mass. 230; Bank v. Klingensmith, 7 W. 523; Mather v. Maidstone, 18 C. B. 273. This position is supported by the cases applying the doctrine of estoppel, since whatever would work an estoppel would be sufficient as a valuable consideration: Knights v. Wiffen, L. R. 5 Q. B. 660; Continental N. Bank v. Bank, 50 N. Y. 575; Voorhis v. Olmstead, 66 N. Y. 113; Leather M. Bank v. Morgan, 117 U. S. 96; Bassett v. Holbrook, 24 Conn. 453.

4. But the finding, as a matter of fact, that the stock could not have been sold after June 25, 1886, is erroneous. It by no means follows from the failure of the company, and that it was not the case is shown by the remittance from R. W. Martin, the treasurer, to the claimant of $6,250 in July, 1886, and by his statement in a letter of October 18, 1886, offered in evidence, that the real estate of the company should bring $30,000. The finding is at best a mere inference, and as such may be reviewed by this court: Reading F. Ins. Co.'s App., 113 Pa. 204; Kutz's App., 100 Pa. 75. The court erred in its holding respecting the sufficiency of a moral consideration. That "a mere moral consideration is nothing," has not always been the language of this court: Clark v. Herring, 5 Binn. 36; Earnest v. Parke, 4 R. 455; Stebbins v. Crawford Co., 92 Pa. 295; Willing v. Peters, 12 S. & R. 182; Baeder v. Barton, 11 W. N. 165; Hemphill v. McClimans, 24 Pa. 371; Paul v. Stackhouse, 38 Pa. 306. Even if the proposition to Willis to contribute $12,500 to the working capital, had not the potent sanction

and literal indorsement of the decedent, the benefit moving to the enterprise in which he and his sons were interested created a moral obligation sufficient to sustain an express promise: Greeves v. McAllister, 2 Binn. 592; Landis v. Royer, 59 Pa. 98; Cunningham v. Garvin, 10 Pa. 368; Clark v. Herring, 5 Binn. 36.

5. It was urged below, for the appellees, that the decedent could not have meant by the letter of June 25th, to assume any legal liability, but simply that he would exert his paternal influence on Robert. But the question is, what Willis has a right on receiving the letter to suppose it meant: Benj. on Sales, § 55; Freeman v. Cooke, 2 Exch. 654; Hare on Contracts, 314. If the letter was not a direct promise, then it was an assertion intended to throw Willis off his guard and induce him to allow his money to remain in the company, and as such it presents all the requisites of an equitable estoppel: Faxton v. Faxton, 28 Mich. 159; Southard v. Sutton, 68 Mo. 575; Fay v. Vallentine, 12 Pick. 40; Pausch v. Gerrard, 67 Ga. 319; Crine v. Davis, 68 Ga. 138; White v. Walker, 31 Ill. 422; Harris v. Walker, 21 Pick. 194; Reedy v. Brunner, 60 Ga. 107; Bisph. Eq., § 290; In re Bahia etc. R. Co., L. R. 3 Q. B. 584; Continental N. Bank v. Bank, 50 N. Y. 575; Gilbert v. Groff, 28 Hun 151; Kirk v. Hartman, 63 Pa. 106; Bidwell v. Pittsburgh, 85 Pa. 417. The finding that no fraud was practiced on Willis in the original transaction, ought to be reversed, if erroneous, in the interest of justice. The Martins occupied toward Willis the position of projectors. Therefore, to say that they did not know the falsity of their representations, is not to the point; they were bound to see that they were true beyond a reasonable doubt: Smith v. River Co., L. R. 2 Eq. 264; s. c. L. R. 4 H. L. 64; Henderson v. Henderson, 17 Tex. 560; Glamorganshire I. Co. v. Irvine, 4 F. & F. 947.

6. Willis by his letter of June 18, 1886, appointed Martin his agent to sell the stock, and by retaining the certificate of stock Martin accepted the appointment and entered upon the performance of the mandate. The delivery and receipt of the certificate raised a sufficient consideration for the contract of agency: Story on Bailments, §§ 171 a, 171 c; Elwell's Evans's Agency, *237; Durnford v. Patterson, 7 Martin (La.) 460 (12 Am. Dec. 514); Shillibeer v. Glyn, 2 M. & W. 145; McCauly

v. Davidson, 10 Minn. 418; Clark v. Gaylord, 24 Conn. 484. His liability for negligence in not obeying the order of Willis to sell, is clear: Story on Bailm., § 171 *b*; Williams v. Higgins, 30 Md. 404; Bank of New Haven v. Kenan, 76 N. C. 340; Ferguson v. Porter, 3 Fla. 37; Wilson v. Wilson, 26 Pa. 393; Miner v. Tagert, 3 Binn. 204; Howe v. Sutherland, 39 Ia. 484; Scoby v. Woods, 59 Tenn. 66; Wilts v. Morrell, 66 Barb. 513; Short v. Skipworth, 1 Brock. C. C. 103; Schrack v. McKnight, 84 Pa. 30. Nor can responsibility be escaped on the ground that the letter of June 25, 1886, was a notification that he did not intend to sell the stock, and that the subsequent silence of Willis amounted to a ratification: (*a*) because such intention is not distinctly stated; (*b*) because no data respecting the advisability of a sale were given, and to give silence the effect of ratification, knowledge of all the material facts is essential: Porter v. Patterson, 15 Pa. 235; Schrack v. McKnight, 84 Pa. 26; Cox v. Livingston, 2 W. & S. 103; (*c*) because the delay of Willis in repudiating the act of his agent was not unreasonable: Porter v. Patterson, supra.

*Mr. Richard C. Dale* (with him *Mr. George L. Crawford* and *Mr. George M. Dallas*), for the appellees:

1. By the letter of June 25, 1886, no liability to pay Willis the amount of his investment was assumed. The decedent was naturally annoyed that his kinsman should have been involved in loss through the too sanguine views of his son Robert, who seems to have been the promoter and manager of the business, and with a keen sense of honor determined to see, by the exercise of his parental influence, that Robert made the loss good. The letter was a mere expression of such a purpose, and his death and consequent inability to carry out his purpose cannot convert it into an assumption of contractual liability.

2. If any legal liability was assumed, it was a liability secondary to that of Robert W. Martin, and enforceable only after proof of inability of the creditor to collect his debt from the principal debtor. This is the natural import of the language used, and nothing is shown to vary it. An examination of Mountstephen v. Lakeman, L. R. 7 Q. B. 200, and Harris v. Huntbach, 1 Burr. 373, cited in support of the appellant's claim, will show no analogy or similarity of principle. The

elements of a contract of suretyship, as distinguished from one of guaranty, are not present here. The criterion is whether the promisor assumed to pay at a certain time, if the principal debtor did not, or merely to pay if the latter is found unable to do so: Mizner v. Spier, 96 Pa. 533.

3. If the writing be construed as the assumption of a primary liability, it was without legal consideration, and not enforceable either in law or in equity. It is not the law that a purely moral obligation is a sufficient consideration for a promise; it is only where there has once existed a legal liability which can no longer be enforced because of the bar of a statute, or of some equivalent, that a moral obligation will support a promise: Hare on Contracts, 262; Stebbins v. Crawford Co., 92 Pa. 291. The opinion of the court below very clearly shows that there was no legal consideration for any promise the letter may contain. As to the position that the decedent was bound to carry out the claimant's instruction to sell, a sufficient answer is that the claimant has already received the price at which he authorized the sale.

OPINION, MR. JUSTICE McCOLLUM:

In May, 1886, the appellant purchased two hundred and fifty shares of the capital stock of the Martin Color & Chemical Company for $12,500. The office of the company was in Philadelphia, and its manufactory in Chester, Pa. About the 1st of June, 1886, he visited Philadelphia, and on inspection of the company's property became dissatisfied with his investment, and signified to Robert Martin, a son of the decedent, his willingness to sell his stock at half its cost. On the 18th of June he wrote from Texas to the decedent as follows: "Referring to a conversation I had with your son Robert about the two hundred and fifty shares I hold in the Martin Color & Chemical Company, I enclose a certificate of same, No. 16, for two hundred and fifty shares, and I ask you to dispose of it, and remit the proceeds to the Hanover National Bank, New York, for my credit. Please dispose of it promptly, as I dread the fire risk. Doubtless your son Robert has fully explained to you my views in the matter." This letter, containing the stock, was received by the decedent on the 24th of June, and the next day he acknowledged it, and added: "Whether the stock is sold or not,

give yourself no uneasiness as to fire or otherwise. I will see
that Robert makes you whole." The company failed on the
20th of June, and the stock, when received by the decedent,
was worthless. A settlement was subsequently effected by the
company with its creditors at ten or fifteen cents on a dollar.
About the 16th of July, Robert Martin deposited $6,252 in the
Hanover National Bank, New York, to the credit of the appel-
lant, being half the price paid for the stock, and the sum for
which he had offered to sell it in June. The appellant now
seeks to recover from the estate of the decedent the balance
of the price he paid for the stock.

It is conceded that no liability was incurred by the decedent
in connection with the appellant's purchase of stock. The
learned auditing judge says of this transaction, "that no con-
tractual relation of any sort existed between the claimant and
Robert Martin, the son ; and all semblance of fraud was admit_
ted on the argument to be out of the question. The son sug-
gested to his relative an investment which he believed was
profitable, and in which he had placed his own fortune; and
the claimant acted on the suggestion with the single purpose
of benefiting himself. Neither the son, by his letter advising
the venture, nor the father, by his indorsement of that advice,
assumed any duty toward the claimant." This is obviously a
correct conclusion from the evidence in the case. There is no
moral obliquity in the statement of an honest belief respecting
a business enterprise, and no legal or moral obligation is created
by it. It raises no duty which will constitute a sufficient con-
sideration to support a promise.

If there was any consideration for the promise contained in
the words, "I will see that Robert makes you whole," it must
be found in the appellant's letter of June 18th, and the dece-
dent's answer to it. It is claimed that the words, "whether
the stock is sold or not," secured to the decedent an option to
hold or sell the stock at his pleasure, and that this option con-
stituted the consideration for the promise. But these words do
not justify the inference that the decedent desired such an op-
tion, or to refrain from selling the stock when there should be
a market for it. They are consistent with an immediate sale
of the stock, and with an effort to comply with the request of
the appellant respecting the sale of it. If the correspondence

referred to created a contract relation between the parties to it, and bound the decedent to pay the appellant the price of the stock, or to see that Robert made him whole, a sale of the stock the next day, or an earnest effort to make a sale of it, would not have discharged the obligation. The promise on its face imports a guaranty, and within two weeks of its date Robert paid to the appellant one half the price of the stock, being the sum for which he had offered to sell it a month before. It is said, however, that the undertaking is original, because Robert was not bound to make the appellant whole. As we are of opinion that there is no consideration for the promise, and that the claim has neither legal nor equitable support, we need not discuss this question. Without further elaboration of the subject, we approve the decree of the Orphans' Court, and the reasoning by which it is sustained.

Decree affirmed.