# Lucas *v.* Glass, Appellant.

*Contract—Sale—Option—Parties—Damages.*

Where a person who has sold to two others different amounts of the stock of a corporation, addresses a joint letter to the purchasers, giving them an option to sell back to him at the end of one year the amount of stock which they had respectively purchased at a price named, and the purchasers exercise the option within the year, a bind-

ing agreement based upon the consideration of the mutual promises is created when the option is exercised, and the two purchasers may unite in a joint action to recover the amounts respectively due them. If in such an action there is nothing to show that the stock was of any value at the time of the breach of the contract, the plaintiffs will be entitled to recover the amounts respectively due to them under the agreement to repurchase.

Argued May 6, 1914. Appeal, No. 153, April T., 1914, by defendants, from order of C. P. Allegheny Co., Jan. T., 1914, No. 489, making absolute rule for judgment for want of a sufficient affidavit of defense in case of David B. Lucas and Robert H. Lucas v. C. L. Glass and C. E. Meyer, partners doing business as Glass & Meyer. Before Rice, P. J., Orlady, Head, Porter, Henderson, Kephart and Trexler, JJ. Affirmed.

Assumpsit on an agreement in writing.

Rule for judgment for want of a sufficient affidavit of defense.

From the record it appeared that in November, 1909, David B. Lucas purchased from the defendants 500 shares of stock of the Arizona Central Copper Co. for $250, and about the same time Robert H. Lucas purchased 1,500 shares of the same stock for $750. Subsequently the purchasers of the stock became dissatisfied, and the defendants wrote them the following letter:

"Mr. George M. Bilger of your town, has talked to us on several occasions with reference to the holding of D. B. Lucas of 1,500 shares of Arizona Central Copper Company's stock, and the holding of Robert G. Lucas of 500 shares. He informs us that both of you are greatly worried over this investment and that D. B. Lucas is especially anxious.

"We are fully satisfied as to the future of Arizona Central, and on account of our pleasant relations in the past, we desire to put both of you at ease with reference to this investment. We therefore agree that you shall consider this letter as an option to sell to us at

the end of one year from this date, the amount of stock in Arizona Central above mentioned, which represents an investment on the part of D. B. Lucas of $750 and of Robert G. Lucas of $250, and accumulated interest on each of said items, at this price. This is to say: at the end of one year from this date if you desire to dispose of this stock, we agree to accept it at that time and to pay you the price of fifty cents per share with interest thereon from the date of your purchase.

"You understand that it will be optional on your part whether or not you sell this stock to us, as there are developments under consideration that may cause you to regard the investment from a different point of view within the time mentioned."

On March 10, 1913, the plaintiffs accepted the option, tendered the stock and demanded payment.

The essential portions of the affidavit of defense were as follows:

Deponent denies that the defendants did, on or about March 9, 1912, offer to purchase from the plaintiffs jointly said 2,000 shares of stock of the Arizona Central Copper Company, but admits that the defendants signed and delivered the agreements marked exhibits "A" and "B" attached to the plaintiffs' statement of claim.

Deponent avers and says that said agreements were made and entered into without any consideration whatsoever, and lack mutuality, and he is advised, believes to be true and therefore avers that the same are void and unenforcible at law.

Deponent further says that each of the plaintiffs purchased and owns his respective number of shares of stock individually, that neither is interested in any way in the stock of the other, and deponent is advised, believes to be true and therefore avers that there is a misjoinder of plaintiffs in this case, and that each of the plaintiffs should bring his separate action, subject

to any individual defense, and that the plaintiffs have no joint claim or right of action against the defendants whatsoever.

Deponent denies that said stock is without any value whatsoever, but says that the corporation owns in fee simple a large and valuable mining property, upon which much development work has been done. Said stock is not listed on any public exchange, and deponent knows of no sales of same at or near the time of the alleged default on the part of the defendants to purchase said stock, and is therefore unable to say what the market value of said stock may be, but deponent avers that it was the duty of the defendants to sell, or endeavor to sell the same at the time of the alleged default, inasmuch as the alleged contract price of said stock is not the legal measure of damages for breach of said alleged contract of purchase.

The court made absolute rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*Ralph L. Smith,* for appellants, cited as to the consideration: Martin's Estate, 131 Pa. 638.

Cited as to the measure of damages: Bole v. Fulton, 233 Pa. 609; Herd v. Thompson, 149 Pa. 434; Rhey v. Plank Road Co., 27 Pa. 261.

*John G. Frazer,* with him *Cole & Hartswick* and *Reed, Smith, Shaw & Beal,* for appellees, cited as to the consideration: Clark v. Russell, 3 Watts, 213; Morrow v. Waltz, 18 Pa. 118; Corson v. Mulvany, 49 Pa. 88; Martin's Est., 131 Pa. 638.

Cited as to the measure of damages: Hertz v. Sidle, 20 Pa. Superior Ct. 88.

OPINION BY HENDERSON, J., July 15, 1914:

The defendant sold to one of the plaintiffs 1,500 shares

and to the other, 500 shares of stock in a copper mine. Some time afterward, having learned that the plaintiffs were very much dissatisfied with the investment, the defendants wrote a letter to one of the plaintiffs in which reference was made to the stock and to the plaintiffs' dissatisfaction with the purchase and containing the following: "We, therefore, agree that you shall consider this letter as an option to sell to us, at the end of one year from this date, the amount of stock in Arizona Central above mentioned, which represents an investment on the part of D. B. Lucas of $750, and of Robert G. Lucas of $250, and accumulated interest on each of said items, at this price. That is to say: at the end of one year from this date if you desire to dispose of this stock, we agree to accept it at that time and to pay you the price of fifty cents per share with interest thereon from the date of your purchase." Within the time fixed in the letter, the plaintiffs tendered the stock to the defendants but the tender was refused, whereupon this action was brought to recover the price fixed. Three objections are made in the affidavit of defense to the right to maintain the suit: (1) the agreement was without consideration; (2) there was a misjoinder of plaintiffs, as they had no joint interest in the subject-matter of the suit and therefore no joint right of action; (3) the alleged contract price of the stock was not the legal measure of damages.

That the defendants' letter was an offer of purchase cannot be disputed. It was the tender of an option to the plaintiffs to sell to the defendants the stock at a stipulated price within a limited time. This offer did not constitute an agreement, but was a proposal to enter into an agreement on condition. Up to the time of the acceptance by the plaintiffs there was neither consideration nor contract. The consideration of the promise was executory and it was to become a binding contract at the pleasure of the plaintiffs. When the acceptance of the offer was made in the tender of the

stock the promise which was conditional became binding in the form of a contract the consideration of which was the mutual promises—the defendants to buy and the plaintiffs to sell. The tender might have been withdrawn at any time before acceptance, but after such acceptance the agreement was mutual and on a legal consideration: Morrow v. Waltz, 18 Pa. 118; Corson v. Mulvany, 49 Pa. 88; 9 Cyc. 283. The case cited by the appellants, Martin's Est., 131 Pa. 638, as an authority to the contrary is based on a very different state of facts from that presented in the record before us. There was no option given or assumed by the decedent nor any promise on his part to pay for the stock. It was sent by the plaintiff to the testator with the direction to sell it promptly and deposit the proceeds to the credit of the owner. The testator acknowledged the receipt of the certificate and added in the letter: "Whether the stock is sold or not give yourself no uneasiness as to fire or otherwise. I will see that Robert makes you whole." The claim was based on this promise which was rather the guaranty of the conduct of the son, Robert, than a promise to buy stock, and it is manifest that no contract obligation existed between the son and the claimant. The testator was not bound to buy the stock and the owner was not bound to sell it. There was no loss or benefit moving either way. The promise sued on therefore lacked consideration and mutuality of obligation.

If a contract existed it was entire and included both of the plaintiffs. The subject of the contract was 2,000 shares of stock for which the defendants were to pay fifty cents a share. The offer was intended to cover the whole transaction relating to the purchase of shares in the company by the plaintiffs and they were jointly interested therefore in the purchase money. A tender of all the shares was a condition precedent to the right to recover, and this could only be done by the joint action of the plaintiffs. We see no difficulty, therefore,

in supporting the action by the single contract covering all the shares. The promise should be treated as being made to both of the owners of these shares and the action should be for the price of all of them.

The measure of damages was the difference between the market price of the stock at the time of the breach and the contract price. It is averred in the declaration that at the time the action accrued the stock had no market value and that it now has no market value and is worthless. The affidavit admits that the stock is not listed on any public stock exchange and that the deponent has no knowledge of sales of the stock at or near the time of the alleged default on the part of the defendants and is therefore unable to say what the market value of the stock may be. There is a denial that it is without any value whatsoever, but no attempt is made to fix a value or to state any facts from which any inference of value could be derived. The affidavit in this respect is vague and evasive and therefore insufficient.

The judgment of the court below is supported by authority and is affirmed.